Lewis v. Department of Education is admitted to the United States v. Rising Sun Morning, Your Honor. Mark Werner on behalf of Mr. Rising Sun. Your Honor, Rising Sun is here to appeal a couple of guideline calculation decisions that the district court made in the course of it increasing his sentence to the point where he imposed two life consecutive sentences on two counts of second degree murder. The first guideline calculation error was an obstruction of justice. Let me ask you about that one. Yes, sir. Let's assume for purposes of my question that you are correct. The judge could not properly impose that upward adjustment because threatening his brother and burning the evidence occurred before the police investigation started. Nevertheless, since the judge made findings supporting two other upward adjustments, only one of which he imposed, or he imposed an amount equal to one instead of the two of them, and it was pretty clear what he thought the sentence ought to be and it would have been justified by the others, why isn't it harmless error that the judge did this? Judge, if he only would have made one of these findings, Rising Sun's offense level would have been at level 34. There is quite a bit of difference between level 34, 17 to 21 years, and then an upward departure up to level 39, which is 30 years to life, which is what the judge would have had to do. I think he would have had three for the extreme conduct. That's right. And he would have had another three for the criminal purpose. Your client said it was just a meth rage, and the judge made a finding, no, it was to shut snitches up. And that's a total of six. The judge didn't use all six because the obstruction of justice, too, was enough to get the sentence to where the judge thought it ought to be. Well, there was also the vulnerable victim enhancement also did, Your Honor. I'll ask you about that in a second, but assuming for the moment that vulnerable victim is okay, obstruction of justice is bad, why wouldn't it be harmless that the judge erred on obstruction? Because, Your Honor, I think that that much of a departure, if, remember, the defendant is only 25 years old. Without a departure, it's an adjustment. Agreed. But if without that adjustment, there would have been a more of a departure. And I understand the judge said I could impose six. Was there an upward departure? I thought there was no departure. I thought it was just a guideline sentence in light of the calculation. No. The guideline calculations got up to level 36. Then there was an upward departure up to 39, which was 360 to life. Then he gave him life. Wasn't that an adjustment rather than a departure? No, that was an upward departure. Was it departure? Yes, under extreme conduct and the other one that you mentioned. Okay. I just think it's too big of a, it almost takes it to another plane, Your Honor, and I do not think that would be a reasonable result. On the vulnerable victim, I looked at Weisschedel and it looks as though it held against you. Take your victim to a remote location where nobody can hear the victim's screams. Yeah. It's a vulnerable victim, even if it's an able-bodied man, as in Weisschedel. Weisschedel said you have to, if you're going to impose this type of adjustment based upon him being particularly susceptible, you have to look at all of the circumstances, the surrounding circumstances. You don't just look at what happened to happen in a remote location. You look at how the victim got there, what the defendant's plan was, what the victim's reaction was. In Weisschedel, part of the reason he was in a remote location was because his job required him to be. He was a car salesman who they targeted to go out on a test drive with a plan to kill him and then to steal the car. The case that Weisschedel relied upon, United States v. Malone out of Fifth Circuit, where the defendants targeted a cab driver to come to a remote location. And for purposes, because the cab driver then, because of his occupation, had to let the defendant in the car so he could carjack him. The judge made a specific finding in ruling that the record, that he did not need to look at Rising Sun's conduct or what the record showed about his plan or targeting. And Judge, the record did not show it was an insufficient record. Here's what the record showed. Let me ask you a question. Why does it, why do you require that the victim be targeted? You know, if the victim, in fact, at the time of the offense is vulnerable or particularly susceptible, why shouldn't that be enough? Now, here, as I understand it, they stopped the car because one of the other people in the car wanted to relieve himself. And so it's not clear from the record that they had really planned to do the murder at that location. Right. But how can it be said that the victims weren't susceptible at that location once they were there? Yeah. The guideline says, in order for that enhancement to apply, Your Honor, the defendant had to know or should have known. The examples in the guideline commentary strongly speak to a targeting type of behavior on behalf of the defendant. Examples they use are, in a robbery, the robber selects a handicapped victim. Or in a fraud case, the defendant selects cancer patients for a fraudulent cancer cure type of a thing. And then I look at Weishedell itself and Malone and the other Ninth Circuit case, which was a fraud case where there was targeting that Weishedell relied upon. And all those circumstances in those cases show that there was deliberate activity which made the remote location more than just an incidental circumstance. It was planned on and taken advantage of in a conscious, planned manner. So I think that case law and the language of the guideline itself strongly suggest that the defendant's conduct and its targeting characteristics needs to be part of the picture. And that just because someone happened to find themselves in a remote location and then does the deed, that's just not enough. There was really no evidence in the record that Eugene Risingstead had any appreciation for this location as being a law. Well, this is the place where I'm going to do it. Counsel, if I were to agree with you on both of these points, that they couldn't do the vulnerable victim enhancement or the obstruction of justice, the judge made it pretty clear that he wanted to give this guy the sentence he gave him, and he would have gone up on these other two bases which are allowable. So are we on a fool's errand here to send this back to correct? Well, I don't believe, yes, Your Honor, and I think that's a very good question. I don't believe, Your Honor, if these two enhancements were not implied, Mr. Risingstead would have been at a level 32, which is basically a 14 to 17-year sentence. In order to get the judge to obtain his result, he would then have to upward depart up to level 39, which takes this case into a different stratosphere, 30 years to life, and then not just between 30, but then all the way up to life. But he was clearly going to do that. He was. But if he did it without these enhancements, I do not believe the record would support it as a reasonable sentence. And that's why I brought this appeal. Thank you. 14 to 17, it would be as much as he could go to be reasonable for two separate murders of snitches? That's what his level was for one, Your Honor, 14 to 17 years. That's what his level was at guideline level 32. Now, he could have run those consecutive to each other, and that was part of the plea agreement. Judge, you can do that. I agreed to that, and the prosecutor recommended that in the plea agreement. Now that the guidelines aren't binding, it's easier for judges to go up as well as down. Yes, yes. But their guideline calculations have to be, for a starting point, they still have to be correct. There has to be adequate consultation. May I reserve, Your Honor? Thank you, counsel. Good morning. Laurie Suk for the United States. Starting at the end instead of the beginning with respect to the enhancements, the government will borrow Judge Fletcher's phrase, we do believe it would be a fool's errand to send this case back. In this case, the record is as abundantly clear as an appellate court would want it to be as to what the intent of Judge Siebel is in terms of sentencing Mr. Risingston for these two murders. He analyzed it under the guidelines. He analyzed it under enhancements in the guidelines, departures under the guidelines, and the 3553A factors. And he went even further to say, not blatantly, but certainly implicitly, if I'm wrong, because I'm only going to go up three levels on these two departures, although it would be reasonable for me to actually double that. I don't have to to get where I believe the reasonable sentence is. He, it's clear from this record, I don't think there's any dispute that Judge Siebel will sentence Mr. Risingston to the same sentence if this is remanded. And certainly that can be reviewed again for its reasonableness, but the government in its, again, would argue that this is reasonable. Could you please address the specific enhancements? Yes. Moving to the specific enhancements. On the vulnerable victim, what's your view of the significance of targeting the victim for vulnerability? Is that required? My view is it's not required, Your Honor. And if you couple two cases, one that we've talked about and one that we haven't this morning, the Weischedel case coupled with the Wetsche case, I think that makes clear that targeting is not necessary. It is what makes the victim particularly vulnerable to the crime and whether the defendant should have known or reasonably should have known of that situation in Wetsche if you recall the victim was sleeping. That is, there is no indication in the Wetsche opinion that the defendant targeted the victim at that particular time because they were sleeping. But the victim, what the court said, is that condition rendered the Wetsche victim particularly vulnerable. Coupling that with Weischedel, targeting isn't required. Targeting may not be required, but in that case where the individual is sleeping, I think we would all agree that that makes the person vulnerable. Yes, Your Honor. It's the condition of the victim. That's what I've assumed in these cases in the past, that we look, it's an elderly person who is defrauded or they're disabled or they're a minor. And there's some characteristic of the victim which has to be present. And it seems to me that there wasn't any particular characteristic of this victim that made them particularly vulnerable. And the fact that the crime happened in a remote place was just happenstance. The government would like you to take that step that Weischedel and Wetsche is leading, the path, we'd like you to take the step and understand this with respect to the circumstances where this offense occurred. They were they, meaning Mr. Rising Sun, his brothers, and the two victims were together throughout the evening. The tools that were used to murder these victims were accessible in the same way that they were accessible where the murders occurred, in downtown Lodgegrass, Montana, in the bars that they were in, and in other places that weren't so remote. It's clear, and it's not disputed, that this was certainly a rage, and it certainly could have been very, a very short period of time of premeditation. But what the government's argument is here is that when Mr. Rising Sun found himself in that particular location, not any of the others that night at that time, and the judge accepted our argument that this was in his head, one of these victims was a narc, he took advantage of those victims, of their vulnerability at that particular time. Presumably, if he had been in the middle of Manhattan or, you know, a big city anywhere or a small city, but in the town square or, you know, Times Square, he wouldn't have done these murders in the same way at the same time, which leads me to think the location does make the victim susceptible and that it's not entirely, it may be a happenstance in the sense that it wasn't planned or orchestrated. But I'm not seeing right now that we're in the guidelines language. It requires that someone be a particularly susceptible victim by design. Is that in there? The government can't find it, Your Honor. That's our argument, that the guidelines don't require that. The language isn't there. It may be a step, Judge Fletcher, that we're asking you to take, but it's a step we believe is supported by the reasoning of the cases that have been handed down by this Court. With respect to the obstruction of justice enhancement, okay, there are things that are clear here. First of all, the guideline has been amended because there was certainly, you can call it a split, there are a number of cases that have gone down one side, a number of cases that have gone down the other side. I think, really, it was a reaction to the fact that conduct like what Mr. Rising Sun did here is just absolutely obstruction in the guidelines language. Counsel, I have trouble with that. Let me explain my problem. Okay. It looks to me as though your case is probably wrong on obstruction of justice. It looks to me as though, even though it was obstruction of justice in a common sense way, tell a witness to keep his mouth shut and burn the evidence, it just isn't under the applicable law, because he did it right away instead of waiting until after the police were investigating. So what I wonder about is if you lose on that issue or sub-issue, is there any way that you still get an affirmance, or is that enough so that we're obligated automatically to vacate and remand for resentencing? Your Honor, the answer to that, going back to the beginning of my argument, is yes, there is a way that you can affirm, because the government is arguing that if that is error, it is harmless. What the government's ---- I'm tempted because the judge made it perfectly clear that he thought nothing less than a lifetime in prison would serve the 3553 purposes which he went through with care. But I just wonder whether we have to tell him to take another look because he was wrong on obstruction. Well, in reading a couple of the circuit's cases, Cantrell and Mohamed in particular, what was said specifically is that certainly in the first step, if there's a guideline error, it has to go back if it's material. And what the government is arguing here is that that material means is it harmless. Are we on a fool's errand here? Given, as I started out my argument, given what this Court wants in terms of reviewing a sentence from a district court, which is its reasoning and what it would do in order for the court to decide whether the case is reasonable or unreasonable, the sentence imposed, you have as good a record as I think you would ever get. So in terms of that, yes, you can affirm, and yes, there is a basis in this record to affirm this sentence as reasonable, even if you find the obstruction enhancement is error. Just ---- What would be the harm to the government, if there is any, of remanding it, even if it's predictable that Judge Stiebel would impose the same sentence? What would be the harm if we conclude, as Judge Kleinfeld is suggesting, that the obstruction of justice enhancement might be precluded by precedent? So if we conclude that, what's the ---- is there any damage to the government's position from a remand? I can't honestly argue that there's damage to the government's position. Our evidence is going to remain the same. But it's your role and what you can do here. And simply because it may be the safe course doesn't necessarily mean that you have to do it if there's a legal basis for you to affirm. And in this case, our argument is that really the error here, if it's error, is not material and it's harmless. Just because I really do want the whole enchilada, I want to just point out, I understand your problem with the obstruction of justice language. But the Snyder case out of the Seventh Circuit that is cited in the government's brief is really very close to almost on point. But isn't that an issue for an en banc court? I mean, aren't we ---- as I understand, I could be mistaken, but our panel is bound by prior circuit precedent that even if it's not as cogent as the Seventh Circuits would bind us. The government has made a valiant effort to distinguish your prior precedent so that the way for Snyder is open. And that was done, and you can either accept that, the Ford case, being distinguished or not. But that is our argument. Remind me what the distinction is. The distinction in the Snyder case or in the Ford and the DeGeorge cases. Those cases are, the Ford case, there was a ten-month delay. Clearly, both actually. The connection between the obstruction and its effect on the investigation and prosecution in each case wasn't there. But to be candid, it is clear that the court did, especially in DeGeorge, hang its hat on that during investigation and prosecution language. So, but it is also fair to say that even with those precedents, really this court has not decided a case factually similar to this one, like the Snyder case, where the threat was made prior to the investigation and prosecution but continued on. Was never withdrawn and continued on and, therefore, affected during the investigation and prosecution. And that's the distinction we're making. You've got cases that very much interpret this language and this plain language as what it says, but not quite as factually similar as Snyder. Thank you, counsel. Thank you. Counsel, how do you respond to the government's argument that the obstruction acts were continuing in nature? Let's say, you know, coursing his brother to keep his mouth shut. They really weren't, Your Honor. He told his brother to keep his mouth shut, and his brother turned, a few hours later, turned right around and did exactly what Eugene Roberts and the Rising Sun told him not to do. And the obstruction didn't, there's no affirmative carrying it on into the prosecution or anything like that. They ended when they ended. Furthermore, Moses Rising Sun wasn't influenced by that when he gave his first false statement. What he said was, and it's in the pre-sentence report, paragraph 10, page 10, that I did not give a correct statement because I was mad at those law enforcement officers. They disrespected me. They were dishonest with me. But then, I will talk to them now. So there's really not a good record that had that kind of lasting effect. Your Honor, I think the lesson of Weishadell in Vulnerable Victim is when we're not talking about a physical condition, but we're talking about this catch-all provision, something a little bit more vague, like remote location. You don't just, then the court, what this court seems to have been saying, they look at various circumstances of how it came to be. And you don't just isolate on that circumstance. And that's the lesson that this court has clearly set forth in Weishadell and both of the cases that it quoted. So I think targeting under the catch-all provision is something that this court believes has to be done, has to be looked at as part of the overall circumstances. And the last thing I would just say, Your Honor, is that there is a good record here, but it's a record based on faulty guideline calculations. And they're not immaterial. They deal with the amount of time, and the amount of time when you get that high on the guidelines, it gets higher and higher. The district court did not make this life sentence decision on the basis of where it should have been on the guideline scale. And that's an entirely different matter. Thank you, counsel. United States v. Rising Sun is submitted. Do you all mind if we take a ten-minute recess? We'll take a ten-minute recess.
judges: Fletcher, Kleinfeld, Gould